# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

MIZRAIM RIVERA-RAMOS,

    Plaintiff,

v.                                            CASE NO.: 4:21cv      -     /

MARK INCH, Secretary, State of
Florida Department of Corrections,
in his official capacity, ANTHONY
DAVIS; RODERICK JONES; ANDREW
MURPHY; ANTHONY SHIVER;
DONTARIUS WILLIAMS; and
CALVIN WILSON, each in his individual
capacity as a Corrections Officer of the
State of Florida Department of Corrections,

    Defendants.

_____

## **PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW, Mizraim Rivera-Ramos, by and through his undersigned counsel, and hereby sues the defendants, Anthony Davis, Roderick Jones, Andrew Murphy, Anthony Shiver, Dontarius Williams, and Calvin Wilson, each in his individual capacity. Mr. Rivera-Ramos seeks to remedy the severe injuries he suffered as a result of the defendants' intentional infliction of grossly excessive and wanton physical force, which deprived him of his Eighth and Fourteenth Amendment right to be free from cruel and unusual punishment.

1

## INTRODUCTION

1. This is an action brought by a United States citizen, Mizraim Rivera-Ramos, the plaintiff, who was the victim of cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution. Rivera-Ramos also alleges that the failure of defendant Inch, in his official capacity, to provide reasonable rehabilitative care for Rivera-Ramos violated the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 701, *et seq.*

2. Rivera-Ramos alleges violation of his federal civil rights, specifically his Eighth and Fourteenth Amendment right to be free from cruel and unusual punishment, specifically the infliction of wanton and unjustified physical force, intending to cause harm, by six Department of Corrections officers, that resulted in severe physical harm to Mr. Rivera-Ramos. His injuries included a crushed C4 cervical vertebra, severe damage to his spinal cord, almost complete lower-body paralysis, three displaced teeth, a dislocated left shoulder, and a dislocated left hip. Rivera-Ramos also alleges that the State of Florida, Department of Corrections, subsequently violated the Americans with Disabilities Act and the Rehabilitation Act by failing to provide reasonable rehabilitation for his disabilities, all of which were caused by the individual defendants' unjustified and excessive use of force. Rivera-Ramos seeks declaratory, compensatory, and punitive relief, as well as costs, including his attorneys' and expert witnesses' fees.

## JURISDICTION AND VENUE

3. This action arises under 42 U.S.C. §§ 1983 & 1988, as well as 42 U.S.C. §§ 12101, *et seq.* and 29 U.S.C. §§ 701, *et seq.* This Court has jurisdiction over this

action pursuant to 28 U.S.C. §§ 1331 and 1343.

4. All incidents material to this action occurred in Jefferson County, Florida and defendants at all relevant times did business in Jefferson County, Florida. Venue is proper in this Court pursuant to Local Rule 3.1(A)(3).

## PARTIES

5. Plaintiff Mizraim Rivera-Ramos is an adult United States citizen, a resident of the State of Florida and was, at all relevant times, an inmate at Jefferson Correctional Institution in Monticello, Florida. At all relevant times, he was 27 years old, stood 5'4'' tall, and weighed 117 pounds.

6. Defendant Mark Inch is currently the Secretary of the State of Florida Deparment of Corrections. He is sued in his official capacity only.

7. Defendant Anthony Davis was, at all relevant times, a Captain employed by the State of Florida, Department of Corrections, and he is sued in his individual capacity only.

8. Defendant Roderick Jones was, at all relevant times, an Officer employed by the State of Florida, Department of Corrections, and he is sued in his individual capacity only.

9. Defendant Andrew Murphy was, at all relevant times, an Officer employed by the State of Florida, Department of Corrections, and he is sued in his individual capacity only.

10. Defendant Anthony Shiver was, at all relevant times, an Officer employed by the State of Florida, Department of Corrections, and he is sued in his individual capacity only.

11. Defendant Dontarius Williams was, at all relevant times, an Officer employed by the State of Florida, Department of Corrections, and he is sued in his

individual capacity only.

12. Defendant Calvin Wilson was, at all relevant times, a Sergeant employed by the State of Florida, Department of Corrections, and he is sued in his individual capacity only.

ALLEGATIONS OF FACT PERTINENT TO COUNTS ONE THROUGH SIX

13. On February 12, 2017, Rivera-Ramos was a state prisoner incarcerated at Jefferson Correctional Institution, as Florida prison located in Monticello, Florida, in Jefferson County.

14. On January 26, 2017, Rivera-Ramos was placed in the special confinement unit of the prison, serving a disciplinary term for possession of a prohibited cellphone.

15. Mr. Rivera-Ramos requested a mental health evaluation, and was placed in a one-person special observation cell, located in the special confinement area, dedicated to housing prisoners who request mental health care.

16. As a result of his request, and pursuant to prison policy, Rivera-Ramos was clothed only in a large, one piece, padded uniform, known as a "turtle suit," leaving most of his legs and arms uncovered. He was permitted no shoes or socks. The special uniform was large enough for Rivera-Ramos, who is very slightly built, to sleep in by pulling in his arms and legs close to his body, and up inside the uniform.

17. Also as a result of his request for mental health care, the one-person cell

in which Rivera-Ramos was placed contained only a raised platform, which was built into the wall and which served as his bed, a combination toilet-sink, and nothing else. There was no bedding, personal items, or anything else permitted inside the cell.

18. Shortly thereafter, Rivera-Ramos invoked a mental health emergency, and was escorted to the medical unit of the prison.

19. There, Rivera-Ramos was housed in an identical special observation cell, and remained outfitted in the same uniform.

20. About one week after his transfer to the medical unit of the prison, Rivera-Ramos was evaluated by a mental health practitioner on February 10, 2017, who informed Rivera-Ramos that he would remain in the medical unit for at least one more week of observation and, if necessary, treatment.

21. Two days later, on February 12, 2017, a corrections officer appeared at Rivera-Ramos's cell. The corrections officer informed Rivera-Ramos that he would be escorted back to the same one-person special observation cell in the special confinement unit from which he had been transferred to the medical unit.

22. Rivera-Ramos informed the officer that the prison mental health practitioner ordered his continued housing in the medical wing of the prison for at least another week. The officer responded that it was necessary for Rivera-Ramos's cell in the medical wing to be used for the transfer of another inmate from

the special confinement unit, who was undergoing a mental health emergency.

23. Rivera-Ramos was escorted back to his former special observation cell. He continued to be dressed in the same one-piece uniform, with no shoes or socks.

24. This was the cell from which the other inmate with the mental health emergency had just been transferred.

25. Although the cell appeared to have been superficially cleaned recently, the floor and walls of the cell retained urine and feces from its previous occupant. The odor was nauseating.

26. Because of the odor and the unsanitary condition of the cell, and because Rivera-Ramos remained without shoes or socks, he captured the attention of a corrections officer and requested transfer to a sanitary cell.

27. The officer refused. Rivera-Ramos then requested a word with a "white shirt," that is, a supervisor, whose uniform is distinguishable on that basis for the uniforms worn by corrections officers.

28. A supervisor, believed to be defendant Anthony Davis, a Captain, appeared at the doorway of the cell. He also denied Rivera Ramos's request, for sanitary reasons, for a transfer to a clean special observation cell.

29. Rivera-Ramos' cell was otherwise the same. There was only a built-in platform for a bed, a combination toilet-sink, and nothing else. There was no bedding, and Rivera-Ramos had no personal items.

30. Meanwhile, unknown to Rivera-Ramos, defendant Anthony Davis claimed that he saw him in possession of an unauthorized toothbrush.

31. In fact, Rivera-Ramos had no unauthorized toothbrush, and no other contraband or any personal possessions of any kind.

32. Based on defendant Anthony Davis's claimed observation of an unauthorized toothbrush in Rivera-Ramos' cell, he obtained authorization from Jefferson Correctional Institution Duty Warden Keyannashabar Chambers to assemble a Forced Cell Extraction (FCE) Team composed of defendant Officers Roderick Jones, Andrew Murphy, Anthony Shiver, Dontarius Williams, and defendant Sergeant Calvin Wilson.

33. As the name implies, an FCE Team's purpose is to remove an inmate from his cell by force.

34. The FCE Team was outfitted in special tactical uniforms. The uniforms were black and reinforced, and included black helmets, boots, and protective padding. At least one member of the team possessed a heavy, reinforced shield.

35. The FCE Team arrived at Rivera-Ramos's cell. A corrections officer, Donna Dixon, requested Rivera-Ramos to surrender the unauthorized toothbrush alleged to be in his possession. He responded, honestly, that he had no such toothbrush.

36. Defendants Anthony Davis, Roderick Jones, Andrew Murphy, Anthony

Shiver, Dontarius Williams, and Calvin Wilson then entered Rivera-Ramos's one-person, empty cell, and inflicted a severe beating to a non-resisting, slightly-built man. Again, Rivera-Ramos was 27 years old, stood 5'4", and weighed 117 pounds. He was unarmed.

37. In response to the six-man FCE Team's entrance into his cell, Rivera-Ramos crouched down slightly in an ineffective attempt to protect himself, but otherwise stood. He offered absolutely no resistance whatsoever.

38. Almost immediately, Rivera-Ramos was struck on the top of his head with a heavy, reinforced shield. He immediately lost feeling in his body, and collapsed to the floor.

39. Although he did not know it at the time, the blow to Rivera-Ramos's head crushed his C4 cervical vertebra, severely injuring his spinal cord.

40. Despite the absence of resistance, and despite Rivera-Ramos's paralysis, the defendants continued to inflict force on a helpless inmate. The defendants struck Rivera-Ramos repeatedly, and manhandled him while he was on the floor, eventually flipping him over for handcuffing.  In addition to crushing Rivera-Ramos' C4 vertebra, the defendants forcefully dislocated his shoulder and hip, and struck him in the face, knocking out three teeth.

41. At no time did any defendant call for his colleagues on the FCE Team to cease their physical attack of Rivera-Ramos.

42. The infliction of force ended only when the defendants realized that Rivera-Ramos was not moving.

43. The defendants picked up Rivera-Ramos, and carried him to a laundry room, where they dropped him on the floor.

44. The defendants demanded that Rivera-Ramos stand up and walk back to the cell. Through tears, Rivera-Ramos told them he could not move, and could not feel anything.

45. The defendants picked Rivera-Ramos up from the floor, and carried him back to the cell, where they again dropped him on the floor.

46. Rivera-Ramos remained on the floor overnight. The next morning, a mental health practitioner appeared at the cell with an officer, and asked Rivera-Ramos why he had been moved from the medical wing. While speaking with Rivera-Ramos, he realized that plaintiff was seriously injured.

47. Rivera-Ramos was placed in a wheelchair, and transported to the medical wing for x-rays. A doctor, Verona Cantellops, evaluated him, and discovered that his C4 vertebra was crushed.

48. At her request, the prison warden authorized Rivera-Ramos' immediate transportation to an outside hospital.

49. At Tallahassee Memorial Hospital, Rivera-Ramos received emergency surgery that included the insertion of hardware to stabilize his neck in response to

his crushed C4 vertebra. Rivera-Ramos remained at Tallahassee Memorial Hospital for ten days.

## ADDITIONAL ALLEGATIONS PERTINENT TO COUNT SEVEN

50. On February 22, 2017, Rivera-Ramos was transported to another Florida Department of Corrections facility, the Lake Butler Reception and Medical Center.

51. Rivera-Ramos remained at Lake Butler until November 6, 2017. He received some therapy designed to help him regain some bodily functions.

52. On November 6, 2017, Rivera-Ramos was transferred to Blackwater Correctional Institution, which is not a medical facility. He has been assigned to general population, and has received no physical rehabilitation from the State of Florida, Department of Corrections, since November 6, 2017.

53. Rivera-Ramos remains confined to a wheelchair. He is unable to walk, even with the assistance of a walker or any other assistive device.  His lower body remains virtually completely paralyzed. He suffers ongoing, chronic pain. He deals, on a daily basis, with mental anguish and depression.

54. As a direct and proximate result of the defendants' acts and omissions, Rivera-Ramos has suffered, continues to suffer, and will suffer from substantial harm and damages, including permanent physical injuries, disfigurement, and emotional pain and suffering.

## COUNT I

(42 U.S.C. § 1983 Claim Against Defendant Anthony Davis)

Plaintiff sues defendant Anthony Davis in his individual capacity, and states:

55. All allegations of paragraphs 13 through 49, 53, and 54, are realleged in full and adopted herein.

56. This count is brought through 42 U.S.C. § 1983 for violation of the Eighth and Fourteenth Amendment right to be free from cruel and unusual punishment as a prisoner.

57. At all relevant times, defendant acted under color of state law and intentionally deprived Rivera-Ramos of his rights under the United States Constitution. Defendant is sued in his individual capacity.

58. The force used by defendant was excessive in that it was used maliciously and sadistically for the very purpose of causing harm to Rivera-Ramos.

59. In addition, defendant failed to take any reasonable step to prevent his fellow corrections officers from violating Rivera-Ramos' Eighth and Fourteenth Amendment rights.

59. As a direct and proximate result of defendant's excessive and unjustified use of force, Rivera-Ramos has suffered, continues to suffer, and will suffer from substantial harm and damages, including permanent physical injuries, disfigurement, and emotional pain and suffering.

## COUNT II

(42 U.S.C. § 1983 Claim Against Defendant Roderick Jones)

Plaintiff sues defendant Roderick Jones in his individual capacity, and states:

60. All allegations of paragraphs 13 through 49, 53, and 54, are realleged in full and adopted herein.

61. This count is brought through 42 U.S.C. § 1983 for violation of the Eighth and Fourteenth Amendment right to be free from cruel and unusual punishment as a prisoner.

62. At all relevant times, defendant acted under color of state law and intentionally deprived Rivera-Ramos of his rights under the United States Constitution. Defendant is sued in his individual capacity.

63. The force used by defendant was excessive in that it was used maliciously and sadistically for the very purpose of causing harm to Rivera-Ramos.

64. In addition, defendant failed to take any reasonable step to prevent his fellow corrections officers from violating Rivera-Ramos' Eighth and Fourteenth Amendment rights.

65. As a direct and proximate result of defendant's excessive and unjustified use of force, Rivera-Ramos has suffered, continues to suffer, and will suffer from substantial harm and damages, including permanent physical injuries, disfigurement, and emotional pain and suffering.

## COUNT III

(42 U.S.C. § 1983 Claim Against Defendant Andrew Murphy)

Plaintiff sues defendant Andrew Murphy in his individual capacity, and states:

66. All allegations of paragraphs 13 through 49, 53, and 54, are realleged in full and adopted herein.

67. This count is brought through 42 U.S.C. § 1983 for violation of the Eighth and Fourteenth Amendment right to be free from cruel and unusual punishment as a prisoner.

68. At all relevant times, defendant acted under color of state law and intentionally deprived Rivera-Ramos of his rights under the United States Constitution. Defendant is sued in his individual capacity.

69. The force used by defendant was excessive in that it was used maliciously and sadistically for the very purpose of causing harm to Rivera-Ramos.

70. In addition, defendant failed to take any reasonable step to prevent his fellow corrections officers from violating Rivera-Ramos' Eighth and Fourteenth Amendment rights.

71. As a direct and proximate result of defendant's excessive and unjustified use of force, Rivera-Ramos has suffered, continues to suffer, and will suffer from substantial harm and damages, including permanent physical injuries, disfigurement, and emotional pain and suffering.

## COUNT IV

(42 U.S.C. § 1983 Claim Against Defendant Anthony Shiver)

Plaintiff sues defendant Anthony Shiver in his individual capacity, and states:

72. All allegations of paragraphs 13 through 49, 53, and 54, are realleged in full and adopted herein.

73. This count is brought through 42 U.S.C. § 1983 for violation of the Eighth and Fourteenth Amendment right to be free from cruel and unusual punishment as a prisoner.

74. At all relevant times, defendant acted under color of state law and intentionally deprived Rivera-Ramos of his rights under the United States Constitution. Defendant is sued in his individual capacity.

75. The force used by defendant was excessive in that it was used maliciously and sadistically for the very purpose of causing harm to Rivera-Ramos.

76. In addition, defendant failed to take any reasonable step to prevent his fellow corrections officers from violating Rivera-Ramos' Eighth and Fourteenth Amendment rights.

77. As a direct and proximate result of defendant's excessive and unjustified use of force, Rivera-Ramos has suffered, continues to suffer, and will suffer from substantial harm and damages, including permanent physical injuries, disfigurement, and emotional pain and suffering.

## COUNT V

(42 U.S.C. § 1983 Claim Against Defendant Dontarius Williams)

Plaintiff sues defendant Dontarius Williams in his individual capacity, and states:

79. All allegations of paragraphs 13 through 49, 53, and 54, are realleged in full and adopted herein.

80. This count is brought through 42 U.S.C. § 1983 for violation of the Eighth and Fourteenth Amendment right to be free from cruel and unusual punishment as a prisoner.

81. At all relevant times, defendant acted under color of state law and intentionally deprived Rivera-Ramos of his rights under the United States Constitution. Defendant is sued in his individual capacity.

82. The force used by defendant was excessive in that it was used maliciously and sadistically for the very purpose of causing harm to Rivera-Ramos.

83. In addition, defendant failed to take any reasonable step to prevent his fellow corrections officers from violating Rivera-Ramos' Eighth and Fourteenth Amendment rights.

84. As a direct and proximate result of defendant's excessive and unjustified use of force, Rivera-Ramos has suffered, continues to suffer, and will suffer from substantial harm and damages, including permanent physical injuries, disfigurement, and emotional pain and suffering.

## COUNT VI

(42 U.S.C. § 1983 Claim Against Defendant Calvin Wilson)

Plaintiff sues defendant Calvin Wilson in his individual capacity, and states:

85. All allegations of paragraphs 13 through 49, 53, and 54, are realleged in full and adopted herein.

86. This count is brought through 42 U.S.C. § 1983 for violation of the Eighth and Fourteenth Amendment right to be free from cruel and unusual punishment as a prisoner.

87. At all relevant times, defendant acted under color of state law and intentionally deprived Rivera-Ramos of his rights under the United States Constitution. Defendant is sued in his individual capacity.

88. The force used by defendant was excessive in that it was used maliciously and sadistically for the very purpose of causing harm to Rivera-Ramos.

89. In addition, defendant failed to take any reasonable step to prevent his fellow corrections officers from violating Rivera-Ramos' Eighth and Fourteenth Amendment rights.

90. As a direct and proximate result of defendant's excessive and unjustified use of force, Rivera-Ramos has suffered, continues to suffer, and will suffer from substantial harm and damages, including permanent physical injuries, disfigurement, and emotional pain and suffering.

## COUNT VII

### (ADA and Rehabilitation Act Claim against Defendant Inch, is his Official Capacity)

91. All allegations of paragraphs 13 through 54 are realleged in full and adopted herein.

92. Defendant Inch is named in his official capacity only as Secretary of the State of Florida Department of Corrections.

93. This count is brought under Title II of the Americans with Disabilities Act (ADA) 42 U.S.C. §§ 12102, *et seq.*, and 42 U.S.C. §§ 12131-12134, and its implementing regulations, and the Rehabilitation Act, 29 U.S.C. 701, *et seq.*, and 29 U.S.C. §§ 791-794.

94. The State of Florida Department of Corrections is a public entity, and receives federal funds.

95. After his injuries, Rivera-Ramos became a disabled individual under the meaning of the ADA and the Rehabilitation Act.

96. As a disabled person in the custody of the Department of Corrections, Rivera-Ramos was entitled to a reasonable accommodation of his disability and reasonable rehabilitation.

97. Defendant Inch, in his official capacity, breached his duty to provide reasonable rehabilitative services to Rivera-Ramos to permit him to adjust physically and mentally to the disability created by the unconstitutional actions of

the defendant corrections officers.

98. As a direct and proximate cause of defendant Inch's actions and omissions, Rivera-Ramos has suffered, continues to suffer, and will suffer from substantial harm and violations of his ADA and Rehabilitation Act rights.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Mizraim Rivera-Ramos prays that this Court will enter relief in the following terms to remedy his permanent physical injury, disfigurement, emotional pain and suffering, the failure to provide a reasonable accommodation and rehabilitation for his disability, prejudgment interest, standard costs, and attorneys' fees, expert witnesses' fees, and statutory costs.

1. A judgment for compensatory relief.
2. A judgment for declaratory relief.
3. An award of statutory costs and attorneys' and expert witnesses' fees.
4. An award of standard costs.
5. Such other relief as the Court deems just and proper.

Finally, plaintiff demands a trial by jury.

Respectfully submitted this 12th day of February, 2021,

FARMER AND FITZGERALD, P.A.

*/s/ Matthew Farmer*
Matthew P. Farmer, Esq.
Fla. Bar No. 0793469
400 N. Tampa St., Suite 2840
Tampa, Florida 33602
(813) 228-0095
FAX (813) 224-0269
MattFarmer1@aol.com

TRIAL COUNSEL FOR PLAINTIFF